NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2651-13T3

GREG NOREN,

     Plaintiff-Appellant/
Cross-Respondent,

v.

HEARTLAND PAYMENT SYSTEMS, INC.,

     Defendant-Respondent/
Cross-Appellant.

APPROVED FOR PUBLICATION

February 6, 2017

APPELLATE DIVISION

Submitted May 3, 2016 — Decided February 6, 2017

Before Judges Fisher, Espinosa and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4528-06.

Franzblau Dratch, PC, attorneys for appellant/cross-respondent (Patrick T. Collins, of counsel; Adam Shefki, on the briefs).

Blank Rome, LLP, attorneys for respondent/cross-appellant (Seth J. Lapidow, of counsel and on the brief; Jaret N. Gronczewski, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Plaintiff Greg Noren brought suit against his former employer, Heartland Payment Systems, Inc. (HPS), alleging breach

of contract and a violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14.[1] Pursuant to a jury-waiver provision in Noren's employment contract, the trial court denied his demand for a jury. Following a bench trial, the trial court dismissed Noren's claims and awarded HPS over $2 million in fees and costs. Noren's appeal does not require us to determine the merits of his claims. He also does not contest the application of the jury-waiver provision to his breach of contract claim or that fees may be awarded on that claim. He challenges the application of the jury-waiver provision to the CEPA claim and argues that HPS is not entitled to fees related to his CEPA claim. Because we conclude the jury-waiver provision was not legally enforceable as to Noren's CEPA claim, we reverse the judgment and fee award on that claim, and remand for a jury trial on the CEPA claim. For reasons that follow, we also dismiss HPS's cross-appeal, challenging the trial judge's denial of its summary judgment motion.

---

[1] The complaint also alleged claims of intentional harassment, wrongful discharge, intentional infliction of emotional distress, defamation, false light, fraud and negligent misrepresentation. These claims were dismissed before trial and are not the subject of this appeal.

Noren was employed as a Relationship Manager (RM) by HPS from April 1998 until June 2005. He sold HPS's credit and debit, payroll and related processing card services to merchants. On June 14, 2002, HPS terminated Noren's employment because his contract had expired and he refused to sign a new Relationship Manager Agreement (2002 RMA). On July 15, 2002, Noren faxed a signed copy of the 2002 RMA to HPS and was immediately rehired. The 2002 RMA contained a jury-waiver provision that stated:

> HPS and RM irrevocably waive any right to trial by jury in any suit, action or proceeding under, in connection with or to enforce this Agreement.

In January 2003, Noren signed a Vested Relationship Manager Agreement (2003 VRMA), which: superseded all prior agreements between Noren and HPS, contained a jury-waiver provision identical to the provision in the 2002 RMA as well as a fee-shifting provision, and specified he was an at-will employee. HPS terminated Noren's employment in June 2005.

Noren's demand for a jury trial was denied by the court based on the jury-waiver provision in the 2002 RMA.[2] After a

---

[2] There was significant motion practice concerning the complaint. In addition to a February 2011 order denying HPS's motion for summary judgment and subsequent denial of HPS's

(continued)

twenty-two-day bench trial, the trial court dismissed Noren's complaint, finding he failed to prove either cause of action, and awarded HPS $2,059,206.53 in fees and costs.

## II.

The right to a trial by jury is guaranteed by the New Jersey Constitution, N.J. Const. art. I, ¶ 9, and, in the case of Noren's CEPA claim, explicitly established by statute, N.J.S.A. 34:19-5. The Legislature's intent that the right to a jury trial be guaranteed is manifest from its amendment of the statute in 1990, following our decision in Abbamont v. Piscataway Township Board of Education, 238 N.J. Super. 603 (App. Div. 1990), aff'd, 138 N.J. 405 (1994), in which we held there was no right to a jury trial under CEPA. In response, the Legislature enacted L. 1990, c. 12, amending both CEPA and the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, to

---

(continued)
motion for reconsideration, the motion practice included: a September 2007 order denying HPS's motion to dismiss the complaint and strike the jury demand, a September 2008 order dismissing the complaint as to the individual defendants, a November 2008 order dismissing the complaint, the reinstatement of Noren's CEPA and breach of contract claims on appeal, a March 2010 order granting HPS's motion to strike previously dismissed allegations from Noren's second amended complaint, an October 2010 order granting HPS's motion to reconsider the 2007 denial of its motion to strike Noren's jury demand and striking the jury demand, and a November 2010 order denying Noren's motion for reconsideration and disqualification of the judge.

4

specify that a person who brings a legal action under either statute is entitled to a jury trial. See State v. Sailor, 355 N.J. Super. 315, 322 (App. Div. 2001). As a result, CEPA now explicitly provides, "Upon the application of any party, a jury trial shall be directed to try the validity of any claim under this act specified in the suit." N.J.S.A. 34:19-5 (emphasis added).[3] The amendment of CEPA and LAD in a single enactment reflects their shared character as remedial statutes that "promote[] a strong public policy of the State," that should be liberally construed. Abbamont, supra, 138 N.J. at 431 (citing Judiciary, Law and Public Safety Committee, Statement on Assembly Bills No. 2872, 2118, 2228 (1990)).

Noren's appeal therefore turns on whether the provision in his 2002 RMA is a legally enforceable waiver of this constitutionally and statutorily guaranteed right, a question decided through the application of "customary principles of contract law." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014) (quoting NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div.), certif. granted, 209 N.J. 96 (2011), and appeal dismissed, 213 N.J. 47 (2013)),

---

[3] But see Kaye v. Rosefielde, 432 N.J. Super. 421, 433 (App. Div. 2013) (affirming the trial judge's exercise of ancillary jurisdiction to hear a CEPA claim without a jury, an issue not addressed in Supreme Court's decision reversing), rev'd, 223 N.J. 218 (2015).

cert. denied, ____ U.S. ____, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015).

"[W]hen a contract contains a waiver of rights . . . the waiver 'must be clearly and unmistakably established.'" Morgan v. Sanford Brown Inst., 225 N.J. 289, 308-09 (2016) (quoting Atalese, supra, 219 N.J. at 444). The contractual waiver of rights provision "must reflect that [the party] has agreed clearly and unambiguously to its terms." Atalese, supra, 219 N.J. at 443 (alteration in original) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)). Because "[w]aiver is the voluntary and intentional relinquishment of a known right," Knorr v. Smeal, 178 N.J. 169, 177 (2003), there cannot be a clear and unambiguous agreement to waive without a "mutual understanding" of the terms of the waiver. Atalese, supra, 219 N.J. at 446-47. To be effective, a party must "have full knowledge of his legal rights and intent to surrender those rights." Knorr, supra, 178 N.J. at 177.

"No magical language is required to accomplish a waiver of rights," Morgan, supra, 225 N.J. at 309, and the provision need not "identify the specific constitutional or statutory right" subject to the waiver. Atalese, supra, 219 N.J. at 447. But the provision must be grounded in "plain language that would be clear and understandable to the average" person that statutory

rights are being waived. Id. at 446. In short, to effect a waiver, the language must clearly explain (1) what right is being surrendered and (2) the nature of the claims covered by the waiver.

Language that failed to meet that standard includes the arbitration provision contained in the employment agreement in Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 168 N.J. 124 (2001). The Court found the language too ambiguous to constitute an enforceable waiver of the employee's LAD claim, explaining:

> The clause states that "any controversy or claim" that arises from the agreement or its breach shall be settled by arbitration. That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself. Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD.
>
> [Id. at 134 (emphasis added).]

The Court instructed, "a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." Id. at 135.

In contrast, the arbitration provision in Jaworski v. Ernst & Young US LLP, 441 N.J. Super. 464 (App. Div.), certif. denied, 223 N.J. 406 (2015) identified "[c]laims based on state statutes

7

and local ordinances, including state and local anti-discrimination laws," as covered disputes. Id. at 480 (alteration in original). We observed, "By specifically including state statutory anti-discrimination claims as Covered Disputes, [Ernst & Young] clearly and unequivocally put plaintiffs on notice that any claims arising under the LAD, regarding termination or otherwise, were subject to mandatory arbitration." Ibid.

Similarly, in Leodori, supra, the Supreme Court found the relevant clause in the employee handbook "unambiguously" articulated the intent "to arbitrate all employment-related claims, including those that might be asserted under CEPA." 175 N.J. at 302. The Court explained,

> The relevant provision lists numerous federal statutes by name as falling within its purview, in addition to "any other federal, state, or local statute, regulation, or common-law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." That language easily satisfies the requirement that such clauses provide an unmistakable expression of an employee's willingness to waive his or her statutory remedies.
>
> [Id. at 302-03.]

Although it is plainly preferable for a waiver of rights provision to explicitly state so when the waiver is intended to include statutory rights, it is possible to provide the clarity

8

necessary for a valid waiver without such specific reference. The arbitration agreement in Martindale v. Sandvik, Inc., 173 N.J. 76 (2002), stated that plaintiff agreed to waive her right to a jury trial "in any action or proceeding relating to my employment with Sandvik" and that "all disputes relating to my employment with Sandvik or termination thereof" would be subject to arbitration. Id. at 96. The Court distinguished this language from the arbitration provision in Garfinkel, stating it was free of the "limiting references" that were fatal to the enforceability of that arbitration provision. Ibid. The Court concluded the arbitration provision in Martindale "was clear and unambiguous [and] sufficiently broad to encompass reasonably plaintiff's statutory causes of action." Ibid.

The jury-waiver provision here applied to "any suit, action or proceeding under, in connection with or to enforce this Agreement." (Emphasis added). It made no reference to statutory claims and did not define the scope of claims as including all claims relating to Noren's employment. This language was similar to the language in Garfinkel deemed too ambiguous because it failed to refer to statutory claims. And, by using "this Agreement" as the defining threshold for all suits, actions and proceedings, the provision limits the category of disputes for which a jury trial is waived. We therefore

9

conclude the jury-waiver provision fails to clearly and unambiguously explain that the right to a jury trial is waived as to a CEPA claim and that a remand is necessary for a jury trial on this claim.

III.

The trial judge wrote an extensive opinion to support her award of $2,059,260.53 in attorney fees and costs to HPS. Although fee determinations by the trial court are generally entitled to our deference, Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001), a remand is required here.

"New Jersey has a strong policy disfavoring shifting of attorneys' fees." N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999). We allow for the recovery of such fees only "if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger, supra, 167 N.J. at 440. In this case, there were two possible grounds for the award of counsel fees and costs: the fee-shifting provisions contained in CEPA, N.J.S.A. 34:19-6, and in the 2003 VRMA.

CEPA permits an award of "reasonable attorneys' fees and court costs" to a prevailing employer "if the court determines that an action brought by an employee under this act was without basis in law or in fact." N.J.S.A. 34:19-6. This provision

10

applies only to "a narrow band of cases" in which "the employer must be vindicated <u>and</u> the employee must have proceeded without basis in law or in fact. . . ."  <u>Best v. C&M Door Controls, Inc.</u>, 200 <u>N.J.</u> 348, 358 (2009).  Moreover, because the fee-shifting provision is in derogation of common law, it is strictly construed.  <u>See</u> <u>Buccinna v. Micheletti</u>, 311 <u>N.J. Super.</u> 557, 566 (App. Div. 1998) (citing <u>Hirsch v. Tushill, Ltd.</u>, 110 <u>N.J.</u> 644, 647 (1988)).

It must be noted that the threshold for the award of fees is higher for the CEPA claim.  It was error for the trial judge to conclude the threshold was met based upon her finding that Noren "failed to set forth a viable claim against the defendant pursuant to CEPA."  There is a broad spectrum in the quality of proofs that fall between a claim that is not "viable" and one that is "without basis in law or in fact."  <u>N.J.S.A.</u> 34:19-6; <u>see</u> <u>Buccinna</u>, <u>supra</u>, 311 <u>N.J. Super.</u> at 562 (concluding defendant who prevailed at trial was not entitled to counsel fees under CEPA because there was no finding that plaintiff's claim was "without basis in law or in fact").  A claim is not viable if it fails to satisfy all the requisite elements of proof.  To lack any basis in law or in fact, there must be either no legal authority to support the claim or the absence of a factual basis for the claim.

11

The applicable standard is similar to that for Rule 1:4-8, which authorizes a sanction for an assertion made in a paper filed with the court when "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div.) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)), certif. denied, 200 N.J. 367 (2009). In United Hearts, we concluded,

> [A] pleading cannot be deemed frivolous as a whole nor can an attorney be deemed to have litigated a matter in bad faith where, as in this case, the trial court denies summary judgment on at least one count in the complaint and allows the matter to proceed to trial.
>
> [Id. at 394.]

The fact that Noren's CEPA claim survived summary judgment would similarly appear to preclude a finding that his claim was "without basis in law or in fact." N.J.S.A. 34:19-6; see also Buccinna, supra, 311 N.J. Super. at 562-63 (finding the standard for an award of fees under CEPA, N.J.S.A. 34:19-6, similar to the standard for the frivolous claim law, N.J.S.A. 2A:15-59.1).

Turning to the fee-shifting provision in the 2003 VRMA, we note that "when the fee-shifting is controlled by a contractual provision, the provision should be strictly construed in light

12

of our general policy disfavoring the award of attorneys' fees." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009). The 2003 VRMA states:

> In any suit, action or proceeding arising out of or related to this Agreement, the successful party shall be awarded, in addition to any other relief to which it is found to be entitled, costs of suit, fees of experts and reasonable attorneys' fees against the unsuccessful party.

This language tracks that of the jury-waiver provision, which we hold failed to clearly and unequivocally extend to Noren's CEPA claim. Further, the provision authorizes an award of expert fees. This exceeds the award of what is permitted under CEPA, i.e., "reasonable attorneys' fees and court costs," N.J.S.A. 34:19-6, and is not authorized by another statute or any court rule. See Buccinna, supra, 311 N.J. Super. at 565-66.

The trial judge found the CEPA and breach of contract claims "inextricably intertwined" and so, drew no distinction between expenses incurred to defend against either claim. To be sure, this is a difficult task but one that must be performed to determine what fees are attributable to the breach of contract claim.[4]

---

[4] Relying on Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40, 51-52 (1983), HPS argues that
(continued)

13

IV.

Finally, we turn to HPS's cross-appeal, in which HPS argues the trial court erred in denying its summary judgment motion. Rule 2:6-1(a)(1) states, in pertinent part:

> If the appeal is from a summary judgment, the appendix shall . . . include a statement of all items submitted to the court on the summary judgment motion and all such items shall be included in the appendix, except that briefs in support of and opposition to the motion shall be included only as permitted by subparagraph (2) of this rule.

Contrary to the requirements of this rule, HPS did not submit the items that had been submitted to the trial court on the summary judgment motion or even a statement of the items submitted. HPS's appendix included the briefs and certifications of counsel for Noren and HPS. As to the certification submitted in support of its motion, HPS attached "only relevant exhibits." The certification on behalf of Noren was in the appendix, but "excluding exhibits."

---

(continued)
it is entitled to fees incurred defending both the CEPA and breach of contract claims because they involved a common core of facts and related legal theories. In Hensley, the Court considered the appropriate measure of attorneys' fees in a case where a suit filed alleging several civil rights violations was successful on one claim. Ibid. The award of fees was made pursuant to 42 U.S.C.A. § 1988, which is designed to encourage litigation to vindicate civil rights violations. That underlying public policy does not apply here.

14

In reviewing a summary judgment, we are required to view the evidence that was submitted to the trial court "in the light most favorable to the non-moving party," to determine "if there is a genuine issue as to any material fact or whether the moving party is entitled to judgment as a matter of law." Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). HPS's selective inclusion of exhibits it considers relevant and exclusion of exhibits relied upon by Noren in opposing summary judgment makes that task impossible. Therefore, the cross-appeal is dismissed.

In sum, we reverse the judgment as to the CEPA claim and remand for a jury trial. The judgment regarding the breach of contract claim remains intact and the fee award is remanded for the trial judge to apportion the reasonable amount of fees and costs incurred in defense of the breach of contract claim. The cross-appeal is dismissed.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION