# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0099-15T2
A-0227-15T2
A-0228-15T2
A-0229-15T2
A-1916-16T2
A-2491-16T2

L.C.,

      Plaintiff,

v.

S.C.,

      Defendant-Respondent,

and

W.S.,

      Defendant-Appellant.
_____

L.C.,

      Plaintiff-Appellant,

v.

S.C.,

Defendant-Respondent,

and

W.S.,

Defendant.

_____

L.C.,

Plaintiff-Appellant,

v.

S.C.,

Defendant-Respondent,

and

W.S.,

Defendant-Appellant.

_____

R.S.,

Plaintiff-Appellant,

v.

S.C.,

Defendant-Respondent,

and

W.S.,

    Defendant-Appellant.

_____

        Argued (A-0099-15/A-0227-15/A-1916-16) January 17, 2019 and (A-0228-15/A-0229-15/A-2491-16) February 14, 2019 – Decided August 14, 2019

        Before Judges Simonelli, O'Connor and Whipple.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket Nos. FD-04-2874-12 and FD-04-0186-14.

        L.C., appellant, argued the cause pro se in A-0227-15, A-0228-15 and A-1916-16.

        R.S., appellant, argued the cause pro se in A-0228-15, A-0229-15 and A-2491-16.

        W.S., appellant pro se in A-0099-15 and A-2491-16.

        Kenneth L. Winters argued the cause for respondent (Jardim Meisner & Susser PC and Fisher Family Law LLC, attorneys; Kenneth L. Winters and Lise A. Fisher, on the briefs).

PER CURIAM

    This matter has a long and tortious history marked by the frivolous and vexatious filings of appellants L.C., R.S. and W.S.[1] in their pursuit to compel

---

[1] W.S. is R.S.'s biological mother. We shall sometimes collectively refer to W.S., R.S. and L.C. as appellants.

genetic testing of respondent S.C. to determine the paternity of R.S. and by their blatant violation of orders sealing the record pursuant to N.J.S.A. 9:17-42 and Rule 5:3-2.

R.S. and W.S. lived in Pennsylvania when this saga began. Over nine years ago, the Pennsylvania Court of Common Pleas of Philadelphia County, Family Division (Court of Common Pleas) issued the first of two orders denying W.S.'s petitions to compel genetic testing of S.C. to determine the paternity of R.S., which the Superior Court of Pennsylvania[2] upheld. Impermissibly forum shopping, appellants pursued the matter in New Jersey.

In R.S. v. S.C., No. A-1185-13 and No. A-2102-14 (App. Div. Mar. 8, 2017)[3] and L.C. v. S.C., No A-1817-14 (App. Div. Mar. 8, 2017), we addressed the paternity and genetic testing issues on the merits and affirmed the dismissal of paternity complaints filed here. We held that appellants' repetitive efforts to compel genetic testing of S.C., denied by the Pennsylvania courts, was barred by the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, the doctrines of subject matter jurisdiction, judicial comity, res

---

[2] The Superior Court of Pennsylvania is one of two statewide intermediate appellate courts.

[3] W.S. was also an appellant in R.S. v. S.C.

A-0099-15T2

judicata and collateral estoppel, and the paternity issue could not be re-litigated in New Jersey.  We rejected R.S.'s argument, which he reiterates in his present appeals, that the Pennsylvania orders did not prohibit him from filing a complaint in New Jersey because he was a minor at the time and was not a party to the Pennsylvania paternity action.  We also rejected appellants' unsubstantiated fraud claims, which they reiterate in their present appeals.

Our Supreme Court denied certification.  L.C. v. S.C., 231 N.J. 297 (2017); R.S. v. S.C., 231 N.J. 425 (2017).  Accordingly, we will not address appellants' arguments relating to that part of the July 17, 2015 Family Part order dismissing frivolous complaints to vacate the Pennsylvania orders and compel genetic testing of S.C.  See Park Crest Cleaners, LLC v. A Plus Cleaners & Alterations Corp., 458 N.J. Super. 465, 472-73 (App. Div. 2019) (this court will not address trial court rulings that were cognizable in and dispensed with in a prior appeal); Washington Commons LLC v. City of Jersey City, 416 N.J. Super. 555, 564 (App. Div. 2010) ("[I]f an issue . . . has been determined on the merits in a prior appeal it cannot be re-litigated in a later appeal of the same case, even if of constitutional dimension.").

We will not address L.C.'s and R.S.'s arguments relating to the May 1, 2015 Family Part order imposing attorney's fees sanctions against them for

5

violating orders entered on August 13, 2012 and August 2, 2013, sealing the record in the paternity actions. They did not file their appeal from that order until June 22, 2016. Thus, the appeal is untimely. R. 2:4-1.

We will not address R.S.'s arguments relating to the May 13, 2016 order reducing the attorney's fees sanctions imposed against him to judgment. R.S. did not designate this order in his notice of appeal. "[I]t is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(e)(1) (2019); see also 1266 Apt. Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004). For the same reason, we will not address R.S.'s arguments relating to the June 8, 2017 and June 30, 2017 orders imposing attorney's fees sanctions against him,[4] or R.S.'s and W.S.'s arguments relating to the January 17, 2017 order reducing the attorney's fees sanctions to judgment.

---

[4] In addition to not including the June 30, 2017 order in his notice of appeal, R.S. did not provide the trial court record relating to this order, in violation of Rule 2:5-4(a). This deficiency prohibits a review of his challenge to the order, leaving us no alternative but to affirm. Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004); Soc'y Hill Condo. Ass'n., Inc. v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002).

A-0099-15T2

We also will not address appellants' arguments relating to any other order from which they appeal. We have considered appellants' arguments relating to those other orders in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We limit our review to the trial court's imposition of attorney's fees sanctions against appellants pursuant to Rule 1:4-8 and Rule 1:10-3.

I.

We are compelled to recite the history of this matter in detail in order to place the attorney's fees sanctions in perspective.

R.S. was born in 1993. W.S. identified R.G. as R.S.'s biological father and obtained a child support order against him from the Court of Common Pleas. Seventeen years later, as R.S. approached the age of majority, and after S.C. had become a famous celebrity, W.S. disavowed R.G.'s parentage and claimed S.C. was her son's biological father. W.S. filed a petition in the Court of Common Pleas to compel genetic testing of S.C. and R.G. to determine the paternity of R.S.

In a July 16, 2010 order, the Court of Common Pleas dismissed W.S.'s petitions. Under Pennsylvania law, the entry of a court order for support of a

7

child determines the issue of paternity and collaterally estops the party who sought the support order from later raising the paternity issue against and seeking genetic testing of a putative parent. See Barr v. Bartolo, 927 A.2d 635, 639-40 (Pa. Super. Ct. 2007). Thus, W.S. was estopped from seeking genetic testing of S.C. as a matter of law. W.S. did not appeal.

Eight months later, W.S. filed a second petition in the Court of Common Pleas, again seeking genetic testing of S.C. In a May 19, 2011 order, the court dismissed the petition holding: "Matter is res judicata. A final order was entered July 16, 2010 on this matter, and [W.S.] did not appeal said order."

W.S. did not appeal. Instead, she teamed up with L.C., a New Jersey resident, and designated L.C. as R.S.'s custodian. L.C. filed a complaint against S.C. and W.S. in the Family Part, Atlantic County, for custody of R.S. and to compel genetic testing of S.C. to establish the paternity of R.S.

In two July 26, 2011 orders, the court granted L.C. custody of R.S., but dismissed her complaint, finding jurisdiction regarding paternity remained in Pennsylvania. The court subsequently transferred the matter to the Family Part, Camden County, after L.C. and R.S. moved to that county.

L.C. also intervened in the Pennsylvania matter, and she and W.S. filed motions to vacate the July 16, 2010 and May 19, 2011 orders of the Court of

Common Pleas denying genetic testing of S.C. (the Pennsylvania orders). In a June 14, 2012 order, the Court of Common Pleas vacated the Pennsylvania orders and relinquished jurisdiction over the paternity issue because R.S. had reached the age of majority. S.C. appealed.

Four days later, L.C. filed a complaint against S.C. in the Family Part, Camden County, as R.S.'s "[g]odmother/guardian" to compel genetic testing of S.C., even though R.S. was now an adult. In an August 13, 2012 order, the court closed the proceedings to the public and sealed the record pursuant to N.J.S.A. 9:17-42 and Rule 5:3-2. L.C., her attorney and W.S. were present at the hearing on August 13, 2012 when the court made clear the statute mandated closure of the proceedings and that all court records in the case are confidential. In addition, the order clearly stated it was entered pursuant to the statute and rule. L.C. and W.S. did not appeal.

In a second August 13, 2012 order, the court dismissed L.C.'s complaint for lack of personal jurisdiction over S.C. The court also found the case was subject to the Uniform Interstate Family Support Act (Act), N.J.S.A. 2A:4-30.124 to -30.201, and New Jersey is obligated to recognize the continuing jurisdiction of a tribunal of another State that issued a child support or paternity

order pursuant to the Act, which was the case here. Because S.C. had a pending appeal in Pennsylvania, the court concluded it lacked subject matter jurisdiction.

L.C. filed a motion for reconsideration of the second August 13, 2012 order, which the court denied in a December 14, 2012 order. The court determined L.C. failed to satisfy the standard for reconsideration and reiterated it lacked subject matter jurisdiction and personal jurisdiction over S.C.

On April 23, 2013, the Superior Court of Pennsylvania reversed the June 14, 2012 order of the Court of Common Pleas, effectively reinstating the two Pennsylvania orders denying genetic testing of S.C. L.C. and W.S. did not appeal. Thus, the Pennsylvania orders were final. This should have ended the matter, as the Family Part had ruled three times that it lacked subject matter jurisdiction. However, appellants continued litigating in New Jersey, where they filed frivolous complaints and motions and blatantly violated the sealing orders.

For example, R.S. filed a paternity complaint against S.C. and W.S. in the Family Part, Camden County, to compel genetic testing of S.C. He asserted, with no legal basis, that the Pennsylvania orders did not prohibit his lawsuit because he was a minor at the time and not a party to the Pennsylvania action. We rejected that assertion. R.S., slip op. at 6.

A-0099-15T2

In an August 2, 2013 order, the court closed the proceedings to the public and sealed the record. The order clearly stated it was entered pursuant to N.J.S.A. 9:17-42 and Rule 5:3-2.

In a September 11, 2013 order, the court denied R.S.'s motion to compel genetic testing of S.C. and dismissed his complaint. The court determined the April 23, 2013 order of the Superior Court of Pennsylvania effectively reestablished the Pennsylvania orders declaring the denial of genetic testing as res judicata and must be afforded full faith and credit. The court reasoned:

> The action in [Pennsylvania] involves the same parties, the same issues and must be afforded full faith and credit by the State of New Jersey. The [c]ourt cannot permit the parties to forum shop until finding a result that is satisfactory to them. The "caretaker" [L.C.] filed a petition for paternity against [S.C.] in Atlantic County, in the State of New Jersey and that was denied, stating that Pennsylvania has jurisdiction in the matter. If the determination was made in Atlantic County that Pennsylvania retained jurisdiction of this matter, [Camden County] has no reason to contradict the decision made in Atlantic County.

R.S. appealed, and we affirmed. R.S., slip op. at 12.

In September 2014, W.S. filed a motion to vacate the September 11, 2013 order, and L.C. filed a motion to vacate the August 13, 2012 order dismissing her complaint. In a November 17, 2014 order, the court denied W.S.'s motion finding the court lacked jurisdiction to vacate an order pending on appeal

11

pursuant to Rule 2:9-1(a) and identical issues were before the Appellate Division. W.S. appealed, and we affirmed. R.S., slip op. at 2, 8.

In a separate November 17, 2014 order, the court denied L.C.'s motion. The court again found it lacked subject matter jurisdiction and personal jurisdiction over S.C. and was bound by the prior August 13, 2012 Atlantic County Family Part order holding same. The court also held that even if it had jurisdiction, the issues raised were fully litigated in Pennsylvania, and thus were barred by the doctrines of res judicata and collateral estoppel. The court also determined it was bound by and required to give full faith and credit to the Pennsylvania orders. L.C. appealed, and we affirmed. L.C., slip op. at 5.

L.C. and R.S. subsequently filed a complaint against S.C. and his attorneys in the Law Division alleging various intentional torts, fraud and perjury with respect to the paternity matters. The complaint was not filed under seal and it recited information and included copies of the court record in the paternity matters that were subject to the sealing orders. After the complaint was filed, the National Enquirer published an article about the paternity matter and reported information and events that could only have come from the Law Division complaint. In addition, the New York Daily News published articles about the lawsuit that included direct quotes from L.C. about the paternity

A-0099-15T2

matters. In a February 19, 2015 order, the court sealed the record in the Law Division action.

While the Law Division action was pending, appellants filed an application in the Court of Commons Pleas to set aside the Pennsylvania orders. On February 13, 2015, the court denied the application finding the Pennsylvania Superior Court had reversed the court's order vacating the Pennsylvania orders and reinstated them. L.C. and R.S. ignored this result and, without any legal basis, jointly filed a complaint and motion in the Family Part, Camden County, to set aside the Pennsylvania orders.

Prior to disposition of the motion, S.C. filed a motion in aid of litigant's rights seeking sanctions against L.C. and R.S. for violating the sealing orders by not filing the Law Division complaint under seal. In a May 1, 2015 order, the court found L.C. and R.S. had violated the sealing orders and ordered them to pay an attorney's fees sanction of $1000 pursuant to Rule 1:10-3.[5] The court determined the sanction was an appropriate coercive sanction consistent with the violation.

---

[5] All of the attorney's fees awarded to S.C. throughout this matter were a small portion of the amounts he had requested.

L.C. and R.S. filed a motion for reconsideration of the May 1, 2015 order and sought $15,000 in costs for "harassment."  S.C. filed various motions, including a motion for frivolous litigation sanctions pursuant to Rule 1:4-8 for attorney's fees he incurred in responding to the motion for reconsideration and the complaint and motion to set aside the Pennsylvania orders.

In opposition, to S.C.'s motion for frivolous litigation sanctions, L.C. claimed that at a November 17, 2014 hearing, the court instructed her to file an application to vacate the Pennsylvania orders.  However, the transcript of that proceeding did not support her claim.  Rather, the transcript confirmed the court specifically stated that New Jersey courts were bound by the decisions of the Pennsylvania courts and were required to give full faith and credit to those decisions.

In a July 17, 2015 order, the court denied L.C.'s and R.S.'s motion for reconsideration.  The court found they failed to satisfy the standard for reconsideration and improperly raised new arguments and presented evidence, which, even if relevant and probative, they could have presented on the original motion.  The court also found there was no legal or factual basis for awarding $15,000 for harassment and ordered L.C. and R.S. to pay $1500 for the attorney's fees S.C. incurred in responding to the motion.

A-0099-15T2

In a separate July 17, 2015 order, the court denied the motion to set aside the Pennsylvania orders and dismissed the complaint. The court granted S.C.'s motion for frivolous litigation sanctions and ordered L.C. and R.S. to pay $5000 for attorney's fees S.C. incurred in responding to the complaint and motion. The court again found the Pennsylvania courts had determined the issue of genetic testing, the Pennsylvania orders were final and must be afforded full faith and credit, res judicata applied, New Jersey could not set aside the orders, and New Jersey lacked subject matter jurisdiction. The court noted appellants' had unsuccessfully raised the subject matter jurisdiction several times and emphasized there was no legal, factual, or rational basis for the complaint. The court concluded the complaint and motion was vexatious, legally frivolous, without any merit whatsoever, and warranted a frivolous litigation sanction.

This did not deter L.C., as she subsequently filed a motion to reconstruct the record of the November 17, 2014 hearing claiming the transcript was incomplete because it omitted the court's instruction to file an application to set aside the Pennsylvania orders. However, the court reporter certified the transcript as complete and L.C. acknowledged the court reporter advised that she checked her records and found nothing missing from the transcript. L.C.

A-0099-15T2

also acknowledged that court personnel examined the transcript and the original CourtSmart audio recording and found the transcript was complete.[6]

In a November 17, 2015 order, the court denied L.C.'s motion to reconstruct the record. The court found the motion was vexatious and frivolous and ordered her to pay $3,468.75 for attorney's fees S.C. incurred in responding to the motion. The court determined the transcript of the November 17, 2014 hearing was a complete statement of the entire proceeding, a transcriber certified the transcript was complete, and the audio recording verified the transcript was complete. The court concluded there was no credible evidence the transcript was incomplete, no basis whatsoever to grant the motion, and the level of L.C.'s conduct in filing the motion was so egregious as to warrant frivolous litigation sanctions.

L.C. persisted and filed a motion to stay the November 17, 2015 order. In its discretion, the court denied oral argument, finding L.C. merely reiterated arguments the court already found lacked any legal or factual basis.[7] In a

_____

[6] Our review of the audio recording does not support L.C.'s claim that the transcript was incomplete.

[7] We find no fault in the judge's decision to deny oral argument. The court may deny oral argument where, such as here, the motion is made for the purpose of abusing the judicial system and other parties, see Kozak v. Kozak, 280 N.J.

February 12, 2016 order, the court denied L.C.'s motion and ordered her to pay $1500 for attorney's fees S.C. incurred in responding to the motion. The court incorporated its findings on L.C.'s motion to reconstruct the record and determined she failed to provide any legal or factual basis for a stay. The court concluded L.C.'s motion for a stay was frivolous, vexatious and harassing in nature, warranting the imposition of frivolous litigation sanctions "to deter future frivolous and improperly motivated applications to the [c]ourt, and to hold [L.C.] accountable for her actions."

This did not stop appellants. In April 2016, W.S. posted a self-made video on the Internet in which she revealed the existence of the paternity actions against S.C., identified S.C. by name, and disclosed statements W.S. alleged S.C.'s attorney made in the courtroom on August 13, 2012. On May 6, 2016, this video disseminated on Radaronline.com.[8]

S.C. filed an order to show cause to compel W.S. to remove the video from the Internet and for sanctions for violating the sealing orders. W.S. appeared pro se by telephone at the hearing on the order to show cause. She

Super. 272 (Ch. Div. 1994), or when the motion fails to properly present substantive issues for court determination. Palombi v. Palombi, 414 N.J. Super. 274, 285-86, 288 (App. Div. 2010).

[8] Radaronline.com is an entertainment and celebrity gossip website.

admitted, under oath, that she was a party to L.C.'s paternity action, was in court on August 13, 2012 when the court sealed the record, and knew the record was sealed and she was not to talk about or disseminate any information about this case to anyone. She also admitted she nevertheless made and disseminated the video to support R.S. in his paternity action.

In a May 26, 2016 order, the court ordered W.S. to immediately remove or authorize the removal of the video from the Internet. The court found W.S. was aware the matter was under seal and knowingly and intentionally violated the August 13, 2012 sealing order by posting the video on the Internet. The court ordered W.S. to pay $1,687.50 for attorney's fees S.C. incurred for the order to show cause "as a result of a blatant violations of the [c]ourt's [o]rder sealing the record."

The court re-heard the matter on June 28, 2016, after W.S. claimed she was unable to participate fully in the prior hearing. Now represented by an attorney, W.S. argued she did not violate the August 13, 2012 sealing order because sealing a record means only that the press cannot obtain information or documents from the court and there was no "gag order" or injunction prohibiting her from speaking publicly about the case.

The court rejected this meritless argument emphasizing that the clear intent and purpose of the sealing orders, which the court reiterated on the record numerous times throughout the proceedings, was to prohibit dissemination of any documents or information and any discussion about the case in public, and W.S. admitted she knew this. In a June 28, 2016 order, the court incorporated the May 26, 2016 order, reaffirmed the meaning and effect of the sealing orders, and held:

> [t]he parties are prohibited from causing this matter to be discussed with or publicized by others . . . and are prohibited from disseminating documents and information to third parties and the press and/or causing others to discuss and/or release to the press or third parties information and documentation regarding the matters and proceedings in this action and in the related action . . . .

Undeterred, appellants thereafter sought a certified copy of the audio recording of the November 17, 2014 hearing, again claiming the transcript was incomplete. The Deputy Clerk for Appellate Administration sent R.S. and W.S. a CD of the audio recording of the hearing and certified the CD contained "a true and unaltered copy of the original court event that was recorded on November 17, 2014 . . . ." Appellants gave a copy of the CD to a clerk at a United Parcel Service (UPS) store for "analysis." The UPS clerk wrote to the

Acting Administrative Director of the Courts indicating he had reviewed "the entire contents of the CD[,]" meaning he had actually listened to it.

Upon learning of this, S.C. filed two motions in aid of litigant's rights, one against L.C. and W.S. for violating the August 13, 2012 sealing order, and the other against W.S. and R.S. for violating the August 2, 2013 sealing order.

In separate December 20, 2016 orders, the court granted the motions. The court emphasized there was a pattern of violating the sealing orders and appellants' conduct in disseminating the CD to the UPS clerk was a clear and blatant violation of those orders. The court ordered L.C. and W.S. to pay $1875 and W.S. and R.S. to pay $3375 for attorney's fees S.C. incurred in filing the motions. These appeals followed.

II.

W.S. challenges the May 26, 2016 order imposing attorney's fees sanctions against her for violating the August 13, 2012 sealing order by posting her self-made video on the Internet. She argues she was not a party to the sealing order and committed no violation because N.J.S.A. 9:17-42 only prohibits disclosure of physical records to the public.

W.S. also challenges the December 20, 2016 order imposing attorney's fees sanctions against her for violating the sealing orders by disseminating the

CD of the November 17, 2014 hearing to the UPS clerk. She argues the sealing orders only prohibited the parties from disseminating information to third parties and the UPS clerk was a computer expert, not a third party. L.C. and R.S. also challenge the December 20, 2016 order, arguing they were not involved in the dissemination of the CD to the UPS clerk.

The court entered the attorney's fees sanctions under to Rule 1:10-3, which "allows any litigant to invoke relief in aid of a judgment or order of a court." In re Daniels, 118 N.J. 51, 60 (1990). The purpose of the rule "is to provide a mechanism, coercive in nature, to afford relief to a litigant who has not received what a [c]ourt [o]rder or [j]udgment entitles that litigant to receive." D'Atria v. D'Atria, 242 N.J. Super. 392, 407 (Ch. Div. 1990) (discussing R. 1:10-5, later amalgamated with R. 1:10-3). A court may thus order monetary sanctions or equitable relief under Rule 1:10-3, "related to the litigant's damages" and not "primarily punitive in nature[,]" id. at 408, or an award of counsel fees "to be paid by any party to the action to a party accorded relief under this rule." R. 1:10-3. Thus, pursuant to the rule, "a party who willfully fails to comply with an order or judgment entitling his adversary to litigant's rights is properly charged with his adversary's enforcement expenses." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.4.5 on R. 1:10-3 (2019).

21

We "review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018). An abuse of discretion "only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We discern no abuse of discretion here.

Rule 5:3-2(b) permits the court to seal the court record in Family Part matters. Court records include "any information maintained by a court in any form in connection with a case or judicial proceeding, including but not limited to pleadings, motions, briefs and their respective attachments, [and] evidentiary exhibits[.]" R. 1:38-2(a)(1) (emphasis added).

N.J.S.A. 9:17-42 mandates the closure of the proceedings and sealing of the court record in paternity actions:

> Notwithstanding any other law concerning public hearings and records, any action or proceeding held under this act shall be held in closed court without admittance of any person other than those necessary to

22

the action or proceeding.  <u>All papers and [court] records and any information pertaining to an action or proceeding held under this act which may reveal the identity of any party in an action</u>, other than the final judgment or the birth certificate, whether part of the permanent record of the court or of a file with the State registrar of vital statistics or elsewhere, <u>are confidential</u> and are subject to inspection only upon consent of the court and all parties to the action who are still living, or in exceptional cases only upon an order of the court for compelling reason clearly and convincingly shown.

[(Emphasis added).]

In addition, <u>Rule</u> 1:38-3(a) prohibits dissemination of court records "required to be kept confidential by statute [or] rule[.]"

The sealing orders were valid and were never appealed.  The orders, entered pursuant to statute and rule, prohibited appellants from disseminating court records and "any information" pertaining to the paternity matters to third parties without the court's and S.C.'s consent or a court order.  The CD of the November 17, 2014 court hearing was a court record in the paternity matters and the UPS clerk was a third party.

W.S. was subject to both sealing orders.  She was a named party in L.C.'s and R.S.'s paternity actions and was present on August 13, 2012 when the court entered the sealing order and made clear that N.J.S.A. 9:17-42 mandated the closure of the proceedings and all records in the case were confidential.  She

admitted she was aware of the sealing orders and that she could not disclose any information pertaining to the paternity matters to anyone. She violated the sealing orders by disseminating information about the paternity matters and revealing S.C.'s identity in the self-made video she posted on the Internet for the world to see.

It is clear to us from the record that appellants acted in concert throughout these proceedings. Thus, L.C.'s and R.S.'s claim that they were not involved in the dissemination of the CD to the UPS clerk lacks credibility. Thus, appellants' dissemination of the CD to the UPS clerk without the consent of the court and S.C. or a court order was a blatant violation of the sealing orders.

Appellants' egregious violation of the sealing orders warranted the imposition of attorney's fees sanctions under Rule 1:10-3. We are satisfied that the amounts awarded and reduction of the unpaid sanctions to judgment was more than justified, amply supported by the record, and does not amount to an abuse of discretion. Appellants' arguments to the contrary have no merit whatsoever and warrant no further discussion.

### III.

L.C. and R.S. appeal from the July 17, 2015 order imposing a $5000 attorney's fees sanction for their complaint and motion to set aside the

A-0099-15T2

Pennsylvania orders. L.C. also appeals from the November 17, 2015 order imposing a $3,468.75 attorney's fees sanction for her motion to reconstruct the record of the November 17, 2014 hearing, and the February 12, 2016 order imposing a $1500 attorney's fees sanction for her motion to stay the November 17, 2015 order.

The court imposed the sanctions against L.C. and R.S. under Rule 1:4-8.[9] We review the court's decision on a motion for frivolous litigation sanctions under an abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)). We discern no error here.

Rule 1:4-8 attorney's fees sanctions "are specifically designed to deter the filing or pursuit of frivolous litigation[.]" LoBiondo v. Schwartz, 199 N.J. 62, 98 (2009). A second purpose of the rule is to compensate the opposing party in defending against frivolous litigation. Toll Bros., Inc. v. Twp. of W. Windsor,

---

[9] The record reveals that S.C. complied with the procedural and substantive requirements of the Rule 1:4-8.

190 N.J. 61, 71 (2007).  The court may impose sanctions where an attorney or pro se party filed a pleading or motion with an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; the claims or other legal contentions were not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and the factual allegations have no evidentiary support.  R. 1:4-8(a)(1) to (3).  Further, we have held a claim is frivolous when "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable."  Noren v. Heartland Payment Sys., Inc., 448 N.J. Super. 486, 498 (App. Div. 2017) (quoting United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (2009)).

"Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded."  First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007).  Sanctions are warranted "only when the pleading as a whole is frivolous or of a harassing nature[.]"  Iannone v. McHale, 245 N.J. Super. 17, 32 (App. Div. 1990) (quoting Romero v. City of Pomona, 883 F.2d 1418, 1429 (9th Cir. 1989)).

There was no legal basis whatsoever, let alone a reasonable and good faith basis, for L.C.'s and R.S.'s complaint to set aside the Pennsylvania orders.  The

A-0099-15T2

complaint was barred by the Full Faith and Credit Clause and the doctrines of subject matter jurisdiction, judicial comity, res judicata and collateral estoppel. Moreover, the court never instructed L.C. or R.S. to file an application to set aside the Pennsylvania orders.

Nor was there any reasonable or good faith basis for L.C.'s motion to reconstruct the record of the November 17, 2014 hearing, or her motion to stay the November 17, 2015 order imposing a $3,468.75 attorney's fees sanction for that motion. We agree with the trial court, and our review of the record confirms, that these motions were frivolous, egregious, vexatious and harassing in nature, and warranted the imposition of frivolous litigation sanctions.

To the extent we have not specifically addressed any of appellants' remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We make one final comment. The court record in these appeals are sealed and the court records in the Family Part and Law Division matters remain sealed. Any dissemination of any court records or any information pertaining to these matters to anyone without the required consent or court order shall result in the imposition of sanctions against the violator as determined by the court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27                                                            A-0099-15T2